IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MANDY GREENFIELD, )
)
                       Plaintiff, )
)
   v. )    Case No. 18-cv-2655-DDC-TJJ
)
NEWMAN UNIVERSITY, INC., et al., )
)
                       Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Disqualify Lewis Brisbois Bisgaard & Smith, LLP (ECF No. 22). Plaintiff Mandy Greenfield requests that the law firm of Lewis Brisbois Bisgaard & Smith, LLP ("the law firm") be disqualified from representing Defendants in this case because of its representation of Defendant Newman University, Inc. during the investigation of the Title IX complaints at issue. In the alternative, Plaintiff requests that Alan R. Rupe, Jeremy K. Schrag, Christina M. Guerin, and Laura J. Anson, attorneys in the law firm, be disqualified from representing Defendants for the same reason. Defendant Newman University, Inc. ("Newman") opposes the motion. For the reasons set out below, the Court finds the motion should be granted and Plaintiff afforded the alternative relief she seeks.

**I.    Factual Background**

The parties' factual statements are not in complete agreement. Where one party supplies a declaration in support of that party's factual recitation and the opposing party offers no opposing affidavit, the Court will accept such facts as true for purposes of this motion. In

1

addition, because Newman has not filed an answer, the Court accepts as true the factual allegations of the First Amended Complaint[1] for purposes of this motion.

Newman hired Plaintiff as its Human Resources Director in 2014. On October 9, 2017, Newman's Title IX executive committee directed Plaintiff to coordinate the investigation of a Title IX complaint filed by Newman's head volleyball coach asserting sexual harassment and gender discrimination against Newman's athletic director who also served as director of student affairs. An investigation ensued. On December 1, 2017, as the investigation was nearing its conclusion, Jeremy Schrag (at attorney at the law firm) and another individual told Plaintiff that the law firm would be taking over this investigation and those in three other Title IX complaints that had been filed since October 9, 2017. Mr. Schrag also gave Plaintiff a letter from Newman's board chair. The letter informed Plaintiff the board of trustees had decided to place her on administrative leave effective immediately, but the leave was "not a disciplinary action."[2] The letter also advised that Newman expected Plaintiff to cooperate in the law firm's continuation of the investigation. That same day, a member of the board also asked Plaintiff to submit a "whistleblower complaint" as soon as possible.

One week later, Plaintiff sent her "whistleblower complaint" to the board chair, who then asked for additional specific allegations. On December 19, Plaintiff provided the additional information.

On December 28, 2017, Mr. Schrag sent Plaintiff an email, with a copy to Alan Rupe, asking her to meet with them as part of their Title IX investigation. Plaintiff responded the next

---

[1] ECF No. 5.

[2] ECF No. 34-1 at 3. Plaintiff has submitted the letter as an exhibit in support of the instant motion.

day and agreed to a meeting on January 4, 2018, at the law firm's Wichita office. By this point, Plaintiff had retained counsel who had sent a letter to the law firm asking questions on Plaintiff's behalf.

Plaintiff attended the January 4, 2018 interview as scheduled, which apparently began with Mr. Schrag.[3] "Mr. Rupe arrived after the interview started and stayed until the end. He took notes, whispered questions to Mr. Schrag, clarified questions with me and was the one coordinating when my next interview would take place to get the date and time set with his schedule."[4] Mr. Rupe also said he would be responding to the letter counsel had sent on Plaintiff's behalf.

The following day, Mr. Rupe called Plaintiff's former Human Resources assistant and left a voice mail message identifying himself as an attorney asked by Newman to do an investigation into some of the work environment issues within Newman. Newman's president also left two voice mail messages asking the former assistant to call Mr. Rupe.

Although Mr. Rupe denies attending any other interviews performed by Mr. Schrag, former Newman IT employee Kelly McCarthy states in a declaration that on January 3, 2018, she was interviewed by Messrs. Schrag and Rupe in their office. Mr. Rupe told her that he was handling the HR part of the investigation while Mr. Schrag was handling the Title IX part.

---

[3] Plaintiff concluded her interview with Mr. Schrag and Ms. Guerin on January 9, 2018, at which time Mr. Schrag began to question her about a break-in Plaintiff had reported in the Human Resources offices. On January 23, 2018, Mr. Schrag interviewed Plaintiff again about her whistleblower complaint.

[4] ECF No. 34-1 ¶3.

However, based on the questions they posed to her, "it seemed to [her] that they were investigating Mandy Greenfield . . . , not Title IX issues."[5]

On January 31, 2018, Newman's Vice President for Finance and Administration sent Plaintiff a letter terminating her employment. The letter stated that on January 28, 2018, the executive committee of the board of trustees had received a report "summarizing the results of an independent investigation into [Plaintiff's] management and oversight of Newman's internal investigation into the Title IX complaints submitted by several University employees. . . . The letter . . . directed me to contact Alan Rupe if I had any questions."[6]

Mr. Rupe did not make the decision to terminate Plaintiff's employment with Newman. He received the final report to the executive committee from Mr. Schrag on January 28, 2018, and the following day he and Mr. Schrag attended the executive committee meeting during which Newman decided to terminate Plaintiff's employment.

## II.     Summary of the Parties' Arguments

Plaintiff contends that the law firm, and more specifically attorneys Rupe, Schrag, Guerin, Anson, and any others actively engaged in the investigation described above, are precluded by Rule 3.7 of the Kansas Rules of Professional Responsibility from acting as advocates at trial and from engaging in pretrial activity that may cause confusion to the jury at trial.

Newman argues that Mr. Rupe should not be disqualified from representing it because any information he could possibly be compelled to give would be cumulative of information

---

[5] Declaration of Kelly McCarthy, ECF No. 34-2 ¶5.

[6] ECF No. 23-1 ¶3.

provided by the Title IX investigators. Newman further argues that the law firm need not be disqualified because Rule 3.7(b) permits a lawyer to be an advocate at a trial in which another lawyer in the firm is likely to be called as a witness. And because attorneys Schrag, Guerin, and Anson are not involved in representing a party in this lawsuit, Newman argues it is unnecessary to disqualify them.

### III. Legal Standard for Disqualification of an Attorney Based upon KRPC 3.7(a) (The Advocate-Witness Rule)

Two sources inform whether a district court should disqualify an attorney.[7] "First, attorneys are bound by the local rules of the court in which they appear. . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law."[8]

The District of Kansas has adopted the Kansas Rules of Professional Conduct ("KRPC") as the "applicable standards of professional conduct" for lawyers appearing in this Court.[9] The Court has the power to disqualify counsel at its discretion based upon these professional standards of ethics.[10] Because disqualification affects more than merely the attorney in question, the court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question and that the motion is not being used as directed litigation strategy.[11]

---

[7] *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005).

[8] *Id.* (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994)).

[9] D. Kan. Rule 83.6.1(a).

[10] *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir. 1984); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998).

[11] *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992).

A motion to disqualify must be decided on its own facts, and the court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice.[12] The moving party bears the initial burden of going forward with evidence sufficient to establish a prima facie case that a disqualifying conflict exists. The ultimate burden of proof lies with the attorney or firm whose disqualification is sought.[13]

In deciding a motion to disqualify counsel, the trial court balances several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process.[14] "The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct."[15] A motion to disqualify counsel deserves serious, conscientious, and conservative treatment.[16]

Kansas Rule of Professional Conduct ("KRPC") 3.7, upon which Plaintiff relies as the basis for her request to disqualify the law firm, provides:

---

[12] *Kelling v. Bridgestone/Firestone, Inc.*, No. 93-1319-FGT, 1994 WL 723958, at *10 (D. Kan. Oct. 17, 1994); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *5 (D. Kan. Mar. 31, 2009).

[13] *Smith v. TFI Fam. Services, Inc.*, 17-02235-JTM-GEB, 2018 WL 2926474, at *3 (D. Kan. June 8, 2018) (citing *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1125 (D. Kan. 2004)).

[14] *Nat'l Bank of Andover, N.A. v. Aero Standard Tooling, Inc.*, 30 Kan. App. 2d 784, 791, 49 P.3d 547, 553 (2002).

[15] *Koch*, 798 F. Supp. at 1530 n.2.

[16] *Id.* at 1530.

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
 (1) the testimony relates to an uncontested issue;
 (2) the testimony relates to the nature and value of legal services rendered in the case; or
 (3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.[17]

One of the strongest rationales for this lawyer-witness rule is to prevent jury confusion over the separate roles of an advocate and a witness.[18] This rationale is that combining the roles of advocate and witness has the potential to prejudice the opposing party because a jury may be unclear whether an attorney asked to testify is making a statement that should be taken as proof or as an analysis of the proof.[19]

The District of Kansas uses the so-called *Smithson* test in determining whether potential testimony is necessary and whether counsel should be disqualified based on KRPC 3.7.[20] Under the *Smithson* test, a motion for disqualification should not be granted unless: (a) the attorney would give evidence that is material to the issue being litigated, (b) such evidence is unobtainable from other sources, and (c) the testimony is prejudicial or potentially prejudicial to

---

[17] KRPC 3.7.

[18] *See Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2014 WL 6632939, at *2 (D. Kan. Nov. 21, 2014); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004).

[19] *Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F. Supp. 949, 957 (D. Kan. 1991) (explaining rationale for Model Rule of Professional Conduct 3.7(a) upon which the KRPC 3.7(a) is based).

[20] *See Schneider*, 2014 WL 6632939, at *2 (citing *LeaseAmerica Corp. v. Stewart*, 19 Kan. App. 2d 740, 751, 876 P.2d 184, 192 (1994) (adopting *Smithson* factors).

the testifying attorney's client.[21] The court will not grant a motion to disqualify unless all three of the *Smithson* factors are met.[22]

IV. **Whether the Law Firm or Certain of its Lawyers Should be Disqualified as Necessary Witnesses Based on Potential Testimony Regarding the Investigations that Led to Termination of Plaintiff's Employment**

    A. **Whether the lawyers possess material evidence**

Plaintiff contends any attorney at the law firm who was actively engaged in the Newman investigation possesses personal knowledge of what she refers to as the "repeat investigations" which ultimately led to termination of her employment. As Plaintiff points out, one of the central issues in this case is the motivation or reason for Plaintiff's termination. In the briefing on its motion to dismiss, Newman asserts that the reasons for Plaintiff's termination were discovered during the independent investigation by the law firm, thus making the lawyers Newman's only witnesses. Plaintiff argues their knowledge is clearly "evidence that is material to the issue being litigated," thus satisfying the first *Smithson* factor.

Defendant primarily addresses this issue with respect to Mr. Rupe, suggesting his involvement was limited to being present for two-thirds of Plaintiff's January 4 interview. Even at that, Defendant suggests Mr. Rupe has less knowledge about the interview than Plaintiff and her counsel who were present the entire time. Mr. Rupe denies attending any other interviews performed by any of the Title IX investigators, thereby refuting the notion that he possesses evidence material to the issues being litigated.[23]

---

[21] *Id.*, *See also Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 856 (W. Va. 1991).

[22] *Smithson*, 411 S.E.2d at 856.

[23] "I did not attend any other interviews performed by Mr. Schrag, Ms. Guerin, and/or Mr. Anson." ECF No. 27-1 ¶9.

The Court is faced with reconciling opposing declarations on this issue. While Mr. Rupe denies having attended any other interviews performed by Mr. Schrag, Ms. Guerin, and/or Ms. Anson, Plaintiff has submitted the declaration of Kelly McCarthy, who provides substantial detail about a two-hour interview she had with Messrs. Rupe and Schrag on January 3, 2018, the day before they interviewed Plaintiff. Ms. McCarthy's declaration includes the following statements:

> 2. On January 3, 2018, I was interviewed by Alan Rupe and Jeremy Schrag at their law office. The interview lasted approximately two hours.
>
> 3. At the beginning of the interview, Mr. Rupe stated that he and Mr. Schrag had been retained by Newman University. Mr. Rupe stated that Mr. Schrag was handling the Title IX part of the investigation and that Mr. Rupe was handling the HR part of the investigation.
>
> 4. Mr. Rupe questioned me about the laptops in the HR office and the Title IX personnel, what programs were put on the computers, whether Mandy Greenfield asked me to do anything involving the Title IX investigation, and what I knew about allegations on campus, where Mandy Greenfield's information was stored on the Newman computers and many other questions.[24]

Ms. McCarthy then offered an impression: "It seemed to me that they were investigating Mandy Greenfield . . . , not Title IX issues."[25] Ms. McCarthy's impression suggests a way to reconcile her declaration with Mr. Rupe's. While Mr. Rupe did not attend interviews performed by those in the law firm tasked with conducting the Title IX investigation, the converse may have been true. The interview with Ms. McCarthy may have been Mr. Rupe's interview that Mr. Schrag attended. In any event, the Court credits Ms. McCarthy's declaration. And considering it along with Plaintiff's declarations and the allegations in the

---

[24] ECF No. 34-2.

[25] *Id*. ¶5.

First Amended Complaint, the Court concludes that Messrs. Rupe and Schrag and Mss. Guerin and Anson possess evidence material to the issues being litigated.

The parties agree and the Court accepts that Mr. Schrag and Mss. Guerin and Anson comprised the Title IX investigating team. Although Newman never identifies Mr. Rupe's role, he states in his declaration that he is "an attorney representing Defendant Newman . . . in this lawsuit."[26] Nor does Newman indicate when it retained or otherwise involved Mr. Rupe. Its response states only that "[o]n November 30, 2017, Newman University hired the Title IX investigators to investigate Plaintiff's complaint and the Title IX complaints made to the University."[27] Mr. Rupe was definitely involved no later than December 28, 2017, when Mr. Schrag copied him on the email to Plaintiff asking her to meet with them. Newman's position is that during the investigation Plaintiff made multiple misrepresentations of material facts, and the investigation uncovered that Plaintiff improperly managed the internal Title IX investigation and was motivated by a desire to fulfill a personal agenda.[28] Although Mr. Rupe denies having been "a member of the team that investigated Mandy Greenfield or the Title IX complaints made to Newman,"[29] it is evident that he was brought in at some point during the investigation to handle "the HR part," as he told Ms. McCarthy.

The Court concludes that the law firm's work on behalf of Newman evolved between December 1, 2017, when Mr. Schrag told Plaintiff the law firm was taking over the Title IX

---

[26] ECF No. 27-1 ¶2.

[27] ECF No. 27 at 2.

[28] *Id.* at 3.

[29] ECF No. 27-1 ¶4.

investigation and Newman placed her on administrative leave not disciplinary in nature, and January 31, 2018, when Newman terminated Plaintiff's employment. According to Newman, it learned information during the investigation that caused it to terminate Plaintiff's employment, and understandably Newman availed itself of legal advice as it evaluated and acted upon the information. The Court is in no way critical of Newman or its counsel, nor does it minimize Newman's right to have the counsel of its choice. However, the facts demonstrate that Mr. Rupe, along with Mr. Schrag and Mss. Guerin and Anson, possess evidence material to the determination of the claims and defenses being litigated.

B.  **Whether the evidence can be obtained elsewhere**

Plaintiff acknowledges she is capable of testifying about the three interviews the law firm conducted with her. However, the investigation extended beyond those three interviews. Plaintiff argues that no one from Newman other than its attorneys has firsthand knowledge of the entire investigation, and the evidence concerning it therefore cannot be obtained elsewhere.

Newman does not address this factor for anyone other than Mr. Rupe. With respect to relevant information in his possession, Newman argues that Plaintiff cannot demonstrate that Mr. Rupe is the only individual who could testify "to what happened at Plaintiff's interview."[30] And citing Kansas Rule of Professional Conduct 3.7 which obviates disqualification if the lawyer's testimony is merely cumulative, Newman argues that Mr. Rupe should not be disqualified because members of the investigative team, Plaintiff, and Plaintiff's counsel were also present. Newman also argues that because Mr. Rupe was not a member of the

---

[30] ECF No. 27 at 6.

investigative team, he would not have firsthand knowledge of the team's findings or conclusions and is not subject to disqualification.

The Court finds, and Newman does not argue otherwise, that Mr. Schrag and Mss. Guerin and Anson possess evidence that cannot be obtained elsewhere.

As for Mr. Rupe, Plaintiff's argument is not as narrow as Newman's response. She does not contend that Mr. Rupe is the only individual who could testify about the January 4 interview, but that he and others from the law firm are the only people who know about the entirety of the investigation. The Court agrees with Plaintiff's contention about the breadth of their collective knowledge. But more to the point as it relates to Mr. Rupe, the Court cannot ignore the many details that cumulatively indicate the depth of his individual knowledge: he was included in all email correspondence between Plaintiff and Mr. Schrag regarding the Title IX investigation; when he conducted the interview of Ms. McCarthy the day before Plaintiff's first interview, he identified himself as handling the HR part of the investigation that Plaintiff had no way of knowing even existed; during Plaintiff's first interview, he whispered questions to Mr. Schrag, clarified questions with Plaintiff, and coordinated her next interview with his availability—again, with the knowledge he was conducting an HR investigation that he did not inform Plaintiff was ongoing; and the following day he called Plaintiff's former assistant as part of his investigation into "some of the work environment issues within the university,"[31] and someone from Newman called her two more times asking her to call Mr. Rupe. The Court finds these facts indicative of Mr. Rupe's intimate familiarity that will make him an "unsworn witness" at trial, enabling him to

---

[31] ECF No. 34-1 ¶5.

"subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination."[32]

Keeping in mind that an issue in this case is the motivation or reason for Plaintiff's termination, Plaintiff's contention that there were "repeat investigations" and not only one "independent investigation," the discovery that is likely to be conducted to explore those issues, and the fact that the ultimate burden of proof rests with Newman, the Court finds that Plaintiff has adequately met the second *Smithson* factor by demonstrating that the relevant evidence would not be cumulative and is not otherwise available.

### C. Whether the testimony is prejudicial or may be prejudicial to Newman

Finally, Plaintiff addresses the third factor, arguing Newman could be prejudiced by Mr. Rupe's representation because he may be constrained from making certain arguments by virtue of his own involvement, or may be tempted to minimize his own conduct at the client's expense.[33] Because Newman denies that Mr. Schrag or Mss. Guerin and Anson will be involved in litigating this case, the Court need not consider them in that role. Plaintiff does argue that confusion or prejudice could arise from them testifying and being cross-examined by Mr. Rupe.

The Court agrees that Mr. Rupe's representation of Newman has the potential of causing prejudice, particularly if Mr. Rupe were to testify. In that instance, the jury may confuse what

---

[32] *U.S. v. Evanson*, 584 F.3d 904, 910 (10th Cir. 2009).

[33] In her opening brief, Plaintiff erroneously cast this factor as one that examines whether she could be prejudiced by the law firm's testimony. She corrected the argument in her reply brief and explained how their testimony could be prejudicial to Newman.

is testimony and what is argument, and whether his statements should be taken as proof or as an analysis of the proof. Plaintiff has thus satisfied the third *Smithson* factor.[34]

## V. Whether the Title IX Investigative Lawyers Should be Disqualified

Plaintiff separately argues that Mr. Schrag and Mss. Guerin and Anson should be disqualified because they acted as internal investigators on behalf of Newman and will be witnesses. The Court need not consider the issue because Newman denies those attorneys are involved in representing it in this lawsuit.

## VI. Whether the Motion is Premature

Newman argues that Plaintiff is premature in seeking Mr. Rupe's disqualification because it is too early to tell whether any of his first-hand knowledge will be material at trial. And even if his participation in pretrial proceedings would ultimately result in his testimony being presented at trial, Newman asserts that the Court could restrict Mr. Rupe's participation in particular proceedings as a remedy. Plaintiff disagrees, arguing that she would risk an adverse ruling by waiting until the litigation were well underway. Moreover, Plaintiff asserts that at attorney who is likely to be a necessary witness and has had contact with the opposing party warrants disqualification not only as an advocate at trial, but also in evidentiary hearings and depositions.[35]

---

[34] Newman also argues that it reserves the right to waive any conflict of interest under KRCP 1.7 or 1.9. Rule 3.7(b) permits a lawyer to act as advocate in a trial in which another lawyer in the lawyer's firms is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. Rules 1.7 and 1.9 are not applicable in this situation, as they address conflicts of interest between current clients (Rule 1.7) and between a person and a former client (Rule 1.9).

[35] *See Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2009 WL 902424, at *7 (D. Kan. March 31, 2009).

KRPC 3.7(a) speaks to an attorney who acts as an advocate "at trial." As Judge Waxse noted, the primary purpose of the rule is to avoid jury confusion at trial, and the rule does not automatically require a lawyer's disqualification from all pretrial activities.[36] However, if pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney to be both advocate and witness, it may be appropriate to also disqualify the attorney from pretrial matters.[37]

The Court concludes that Plaintiff's motion is not premature. Judicial economy and the parties' efficiency in litigating this case are best served by addressing the issue now. Given the facts of this case and the parties' claims and defenses, the Court determines that Messrs. Rupe and Schrag and Mss. Guerin and Anson are disqualified from representing Newman in this case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disqualify Lewis Brisbois Bisgaard & Smith, LLP (ECF No. 22) is granted as set forth herein.

Dated this 24th day of May, 2019, at Kansas City, Kansas.

*/s/ Teresa J. James*
Teresa J. James
U. S. Magistrate Judge

---

[36] *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004).

[37] *Id.* at 1126-27.