IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MANDY GREENFIELD,

    Plaintiff,

v.

NEWMAN UNIVERSITY, INC. et al.,

    Defendants.

Case No. 18-2655-DDC-TJJ

## MEMORANDUM AND ORDER

This matter is before the court on defendant Newman University Inc.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Doc. 8. Defendant moves to dismiss two Counts in plaintiff Mandy Greenfield's First Amended Complaint ("Complaint") (Doc. 5): Count IV (Defamation) and Count V (Invasion of Privacy). *Id.* Plaintiff has filed a Response. Doc. 15. And defendant has filed a Reply. Doc. 21. For the reasons explained below, the court grants defendant's Motion to Dismiss Counts IV and V of plaintiff's Complaint.

**I.    Facts**

The following facts come from plaintiff's Complaint and the court views them in the light most favorable to her. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotations marks omitted)).

This lawsuit arises from plaintiff's termination as Newman University's Director of Human Resources in January 2018. Much of the Complaint details events surrounding plaintiff's Title IX investigation of Newman's Athletic Director & Vice President for Student Affairs,

Victor Trilli. But the court need only consider the following facts to decide this Motion to Dismiss.

On November 23, 2017, at about 5:00 p.m., plaintiff entered Newman University's Human Resources office and believed that someone had broken into the office. Doc. 5 at 10 (Compl. ¶ 61). She found her office door and desk drawers unlocked. *Id.* Someone had moved or knocked her computer mouse and tape dispenser to the floor. *Id.* Also, she noticed a folder lying open on an assistant's desk. *Id.* The drawers on both Human Resources assistants' desks were unlocked. *Id.* And, there was a key in the filing cabinet and the classroom door behind plaintiff's office was unlocked. *Id.*

Plaintiff reported the break-in to Newman Director of Security and to the Wichita Police Department. *Id.* at 10 (Compl. ¶ 62). Plaintiff then notified her Human Resources employees of the incident and asked them to keep the information confidential. *Id.* at 11 (Compl. ¶ 63). On November 26, 2017, plaintiff spoke by phone with Newman President Noreen Carocci about the break-in and about a breach of confidentiality issue with a Human Resources employee. *Id.* at 11 (Compl. ¶ 66). The next day, plaintiff met with Ms. Carocci and Vice President for Finance and Administration Jennifer Gantz about the same issues. *Id.* at 11 (Compl. ¶ 68). Ms. Carocci "suggested that it may have been the HR employee who was behind the break-in, which [p]laintiff refuted and stated she did not believe the HR employee was involved with the break-in." *Id.*

On November 28, 2017, Ms. Gantz told plaintiff that Newman's Executive Board recommended that the termination of the Human Resources employee wait until after the Title IX investigation had concluded.[1] *Id.* at 12 (Compl. ¶ 73). But later the same morning, Ms.

---

[1] Though it is not clear, the court construes the Complaint to allege that the terminated Human Resources employee is the same employee plaintiff talked about with Ms. Carocci after the breach of confidentiality issue

2

Gantz told plaintiff that she and Ms. Carocci agreed with plaintiff's recommendation to terminate the employee. *Id.* (Compl. ¶ 74). Plaintiff did so. *Id.* (Compl. ¶ 75). Then, Ms. Gantz and Ms. Carocci "disregarded procedure and made contact with the terminated employee, who was then reinstated to her position . . . ." *Id.*

On December 1, 2017, plaintiff "was locked out of her computer, for the alleged reason that [she] had been terminated for terminating her HR employee." *Id.* at 13 (Compl. ¶ 80). That afternoon, Jeremy Schrag, an attorney from the law firm Lewis Brisbois,[2] arrived at plaintiff's office. *Id.* (Compl. ¶ 81). Newman Board Chair Teresa Hall Bartels joined the meeting by phone. *Id.* (Compl. ¶ 82). Mr. Schrag told plaintiff that Lewis Brisbois was taking over Title IX investigations. *Id.* (Compl. ¶ 81). Also, Ms. Bartels placed plaintiff on administrative leave. *Id.* (Compl. ¶ 82). Ms. Bartels said "the leave was not a disciplinary action" and asked plaintiff to assist the Lewis Brisbois attorneys with the investigation. *Id.* Mr. Schrag gave plaintiff a letter from Ms. Bartels placing her on administrative leave, effective immediately. *Id.* (Compl. ¶ 84). Mr. Schrag told plaintiff to gather her things and leave. *Id.*

On December 5, 2017, Newman University emailed meeting minutes to the "Newman community which contained notice of [p]laintiff's administrative leave, contrary to the protocol not to publish personnel actions regarding employees being placed on leave or suspended." *Id.* at 14 (Compl. ¶ 87). Then, on December 7, 2017, the Newman University newspaper printed a

---

(Doc. 5 at 11 (Compl. ¶ 66)), and who Ms. Carocci suggested may have been behind the office break-in. (*Id.* (Compl. ¶ 68)). Whether it is the same Human Resources employee or a different one does not affect the court's analysis.

[2]    Earlier, the court disqualified four Lewis Brisbois attorneys (Mr. Rupe, Mr. Schrag, Ms. Guerin, and Ms. Anson) from defending Newman University in this case because of their involvement in the Title IX investigation of Mr. Trilli. Doc. 40. Mr. Rupe filed the Motion to Dismiss before the court's ruling. Doc. 8. Mr. Rupe since has withdrawn from the case and other Lewis Brisbois attorneys have entered their appearances. Doc. 42. Since Mr. Rupe has withdrawn and the court did not disqualify the firm from representing defendant, the Motion to Dismiss is not moot.

front-page story about plaintiff' that "linked her leave to the criminal break-in of the HR offices." *Id*. (Compl. ¶ 88). The article reported, "Newman University's Director of Human Resources, Mandy Greenfield, was put on administrative leave this week – less than two weeks after she reported a trespassing incident in her department to the Wichita Police Department." *Id.*

On January 31, 2018, plaintiff received an email from Ms. Gantz terminating plaintiff's employment, effective immediately. *Id.* at 15 (Compl. ¶ 99). On February 22, 2018, the Newman University newspaper published an article about plaintiff's termination. *Id.* (Compl. ¶ 100).

**II.      Legal Standard**

Under Rule 12(b)(6), a defendant may move to dismiss for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not include "'detailed factual allegations,'" but must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Essentially, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). This plausibility standard reflects the requirement in Fed. R. Civ. P. 8 that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012); *see also*

Fed R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain [a] short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

When considering a Rule 12(b)(6) motion, a district court must accept as true all factual allegations in the complaint, but need not extend this presumption to any legal conclusions it asserts. *Iqbal*, 556 U.S. at 678. Viewing the complaint in this fashion, a court must decide whether plaintiff's allegations give rise to more than speculative possibilities. *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). If the allegations in the complaint allow a district court "to draw the reasonable inference that defendant is liable for the misconduct alleged," the claim has facial plausibility and the court should not dismiss it under Rule 12(b)(6). *Davenport v. Wal-Mart Stores, Inc.*, No. 14–CV–2124–JAR–JPO, 2014 WL 3361729, at *2 (D. Kan. July 9, 2014). But, if the allegations in the complaint at issue are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

### III. Discussion

#### A. Count IV: Defamation

Under Kansas law, a plaintiff must allege facts supporting the following elements to state a claim for defamation: (1) false and defamatory words; (2) communicated to a third party; and (3) resulting harm to the reputation of the person defamed. *Luttrell v. United Tel. Sys. Inc.*, 683 P.2d 1292, 1293 (Kan. Ct. App. 1984); *see also Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999). Plaintiff has failed to allege such facts.

Plaintiff alleges the Newman University newspaper published a "false and defamatory" statement based on information from an unidentified Newman University official. The article allegedly reported, "Newman University's Human Resources, Mandy Greenfield, was put on administrative leave this week – less than two weeks after she reported a trespassing incident in her department to the Wichita Police Department." Doc. 5 at 14 (Compl. ¶ 88). The newspaper published another article on February 22, 2018, reporting that plaintiff's employment had been terminated. Doc. 5 at 15 (Compl. ¶ 100).

But plaintiff's factual allegations are fully consistent with these statements in the Newman newspaper. Plaintiff alleges that she reported the Human Resources office break-in to the Wichita Police Department on November 23, 2017. On December 1, 2017—eight days after the break-in report—Ms. Bartels placed plaintiff on administrative leave. The newspaper article reports that these two events happened less than two weeks apart. Plaintiff alleges that Ms. Gantz then terminated her employment on January 31, 2018. *Id.* at 15 (Compl. ¶ 99). On February 22, 2018, another newspaper article reported that plaintiff's employment was terminated. *Id.* (Compl. ¶ 100). According to plaintiff's factual allegations, all the reports about plaintiff in the Newman University newspaper were true. Plaintiff has failed to allege a false statement.

Plaintiff cites *Kraisinger v. Liggett*, 592 P.2d 477 (Kan. Ct. App. 1979), for the proposition that "imputation of a person's unfitness for his trade or profession" are defamatory at Kansas common law. Doc. 5 at 7. But *Kraisinger* says that a defamatory statement about a person's unfitness for his profession is slander per se. *Kraisinger*, 592 P.2d at 479 (Kan. Ct. App. 1979). Slander per se means that "no specific or special damages need be alleged or proved." *Gobin v. Globe Pub. Co.*, 649 P.2d 1239, 1242 (Kan. 1982) (quoting *Bennett v.*

*Seimiller*, 267 P.2d 926, 929 (Kan. 1954). The issue here is whether plaintiff has alleged any false and defamatory words. She hasn't. *See Dominguez*, 974 P.2d at 117 (Kan. 1999) (stating that the elements of defamation are (1) false and defamatory words; (2) communicated to a third person; (3) resulting in harm to his reputation). Whether plaintiff sufficiently pleads damages is not at issue here, so slander per se is irrelevant.

Plaintiff argues that even if the statement about plaintiff's administrative leave is literally true, the statement still defamed her because the "false innuendo or implication was defamatory." Doc. 15 at 7. Specifically, the statement "implied [p]laintiff was placed on administrative leave for criminal wrongdoing." Doc. 15 at 8. The Complaint doesn't cite any Kansas caselaw supporting her "false implication or innuendo" theory. And, "[w]hen the federal courts are called upon to interpret state law, the federal court must look to rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Amparan v. Lake Powell Car Rental Co.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)). Federal courts are "generally reticent" to expand state law without "clear guidance" from the state's highest court. *Id.* at 948 (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017)).

Plaintiff argues courts have "found defamation where the implication of the communication as a whole, when viewed in context, was false." Doc. 5 at 8. The Complaint cites a Pennsylvania case ruling that "the literal accuracy of separate statements will not render a communication 'true' where, as here, the implication of the communication as a whole was false." *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Sup. Ct. Pa. 1982). But plaintiff cites no Kansas authority adopting this "false implication" approach. Without clear guidance from the

7

Kansas Supreme Court, the court declines to expand existing Kansas law and predict that Kansas would adopt this approach.

Even under a defamatory implication or innuendo approach, and construing the alleged statement in the light most favorable to the plaintiff, no reasonable fact-finder plausibly could find or infer a statement about plaintiff reporting a trespassing incident in her office implied that plaintiff herself had committed a crime. The alleged statement links the two events, but never provides a plausible basis for a jury to find that plaintiff trespassed or otherwise had committed a crime in her office or elsewhere.

Since plaintiff fails to allege a false and defamatory statement, the court need not address whether plaintiff sufficiently pleaded the other elements of the claim. The court thus grants defendant's Motion to Dismiss Count IV of plaintiff's Complaint.

### B. Count V: Invasion of Privacy

Count V asserts a claim for false light/invasion of privacy. *See* Doc. 5 at 24 (Compl. ¶¶ 168–69 (alleging that defendant published false and misleading statements about plaintiff that "placed Plaintiff in a false light before the Newman community and public at large."). As the Kansas Supreme Court has held, "[o]ne who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." *Rinsley v. Frydman*, 559 P.2d 334, 339 (Kan. 1977).

False light is one of four types of invasion of privacy under Kansas law. *Dominguez v. Davidson*, 974 P.2d 112, 121 (Kan. 1999) (citing *Castleberry v. Boeing Co.*, 880 F. Supp. 1435, 1442 (D. Kan. 1995)).[3] To state a claim for false light/invasion of privacy, plaintiff must allege

---

[3] The four types of privacy invasion are: "(1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing person in false light." *Rinsley v. Frydman*, 559 P.2d 334, 339 (Kan. 1977). Plaintiff's Complaint here doesn't assert an invasion of privacy claim under the other three types of this tort.

facts supporting the following elements: (1) publication to a third party; (2) the publication falsely represented the person; and (3) that representation is highly offensive to a reasonable person. *Id.* "Courts generally analyze defamation and false light invasion of privacy claims in the same manner." *Robinson v. Wichita State University*, No. 16-2138-DDC-GLR, 2018 WL 836294 at *19 (D. Kan. Feb. 13, 2018) (citing *Stead v. Unified Sch. Dist. No. 259, Sedgwick Cty., Kan.*, 92 F. Supp. 3d 1088, 1109 (D. Kan. 2015)). "The difference between defamation and false light claims lies in the expanded publicity requirement. To support a claim for defamation, communication of the allegedly false information to a single third person is sufficient publication." *Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032, 1043 (D. Kan. 1998).

Since courts treat false light/invasion of privacy and defamation claims similarly, the court declines to predict that the Kansas Supreme Court would expand the false light/invasion of privacy claim to cover defamatory "implication or innuendo." Doc. 15 at 7. Plaintiff's false light/invasion of privacy claim thus fails for the same reason her defamation claim fails: plaintiff never identifies a false representation. The Complaint identifies the statement in the Newman University newspaper linking her administrative leave and subsequent termination to the Human Resources office break-in ("Newman University's Human Resources, Mandy Greenfield, was put on administrative leave this week – less than two weeks after she reported a trespassing incident in her department to the Wichita Police Department."). Doc. 5 at 14 (Compl. ¶88). But this allegation is not capable of supporting a false light/invasion of privacy claim. No reasonable jury plausibly could find or infer that plaintiff's report to the Wichita Police Department less than two weeks before her administrative leave suggests she had committed a crime. Thus, plaintiff has failed to state a claim for false light/invasion of privacy. The court grants defendant's Motion to Dismiss Count V.

9

## IV. Conclusion

For the reasons specified above, the court grants defendant's Motion to Dismiss Count IV (Defamation) and Count V (Invasion of Privacy) of plaintiff's First Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Newman University's Motion to Dismiss Counts IV and V of plaintiff's First Amended Complaint (Doc. 8) is granted.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**